## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TARGUS INTERNATIONAL LLC,<br>a Delaware limited liability company,<br><br>      Plaintiff/Counter-Defendant,<br><br>v.<br><br>GROUP III INTERNATIONAL, INC.,<br>a Florida corporation,<br><br>      Defendant/Counter-Plaintiff. | **Case No.: 1:20-cv-21435-RNS**<br><br>**JURY TRIAL DEMANDED**<br><br>**DEFENDANT'S EXPEDITED MOTION TO STAY PENDING *INTER PARTES REVIEW* OF U.S. PATENT NO. 8,567,578** |

Defendant, Group III International, Inc. ("Group III"), by and through the undersigned counsel, and pursuant to this Court's Scheduling Order [Dkt. No. 28] and S.D.Fla. L.R. 7.1(d)(2), hereby files this Expedited Motion to Stay the Instant Litigation filed by Plaintiff, Targus International LLC ("Targus"), [Dkt. No. 1], Pending the *Inter Partes Review* of U.S. Patent No. 8,567,578 ("the '578 Patent"), the patent in-suit, and, in support thereof, states:

### PROCEDURAL POSTURE

Targus filed the instant action against Group III on April 2, 2020, alleging infringement of the '578 Patent. [Dkt. No. 1]. In doing so, Targus has alleged that dozens of Group III's products infringe nearly 40-claims of the '578 Patent; *to wit*: claims 1-6, 12-14, 17-19, 21-24, 27-33, 38, 39, 42, 44, 46-48, and 50-57. In response to the Complaint, Group III filed a Motion to Dismiss arguing, *in part*, that Targus had inadequately pled its claims of patent infringement. *See* [Dkt. No. 21]. On October 22, 2020, this Court agreed that Targus's pleading was inartful, but entered its Order denying Group III's Motion to Dismiss; Group III thereafter filed its Answer, Affirmative Defenses and Counterclaims against Targus on October 30, 2020. *See* [Dkt. Nos. 42, 45]. Targus

filed a Motion to Dismiss Count III of said Counterclaims and to Strike Group III's Third Affirmative Defense, [Dkt. No. 50], and said omnibus Motion remains pending.

Since the commencement of this litigation, the parties have only engaged in written discovery. Neither party has taken any oral depositions, and Group III has only issued one third-party subpoena. Targus has not sought any third-party discovery. Aside from written discovery, the parties have complied with the Court's Scheduling Order regarding infringement, non-infringement, invalidity, unenforceability, and preliminary claims construction disclosures. That said, neither party has filed Claim Construction briefs, as opening briefs on said issue are not due until January 12, 2021. [Dkt. No. 28, at 2]. A *Markman* hearing has not yet been scheduled, fact discovery remains open until April 28, 2021, and is followed by the closure of Expert Discovery on June 11, 2021. *Id*. Pretrial submissions are not due until October 2021, and a trial date has not yet been set by this Court. Needless to say, although eight months have passed since Targus commenced this litigation, not much has occurred substantively. Group III has now filed an *inter partes* review petition with the United States Patent Trial and Appeal Board ("PTAB") to challenge the validity of the '578 Patent. *See* e-filed copy of Petition for *Inter Partes* Review in **Exhibit "A."** Group III's successful pursuit of the *inter partes* review would entirely moot this litigation as the '578 Patent would be cancelled, and Targus would thus lose its standing to sue under said patent. As such, said recent *inter partes* review filing gives rise to the instant Motion to Stay.

## The '578 Patent

Prior to March of 2008, travelers were required to remove portable, *i.e.*, "laptop," computers from their cases prior to sending them through an X-ray scanner during mandatory security screening at airports. In March 2008, however, the United States Transportation and

Security Administration ("TSA") announced new standards that would permit travelers utilizing appropriate travel gear to keep their laptops inside of their compliant cases during the screening process. Upon the announcement of such new standards, many bag manufacturers -- including Targus -- endeavored to accommodate their existing travel gear to meet the new TSA standards. In this regard, Targus's '578 Patent is directed to cases for carrying laptop computers through security screening at airports without the need to remove the laptop from the case. [Dkt. No. 1-1, at 2 (Abstract)]. Specifically, the '578 Patent describes a computer case with two sides that connect to each other at a hinge so the two sides can open and lay flat on a security scanning X-ray conveyor belt. *Id*. at Fig. 13B. The claimed case is "comprised of materials configured to allow the contents thereof to be scanned by a scanning device, such as an X-ray." *Id.* at Abstract. Because one side of the case holds only the laptop and nothing else, the X-ray scanner can obtain a clear and unobstructed image of the laptop, which allows the TSA to confirm that the laptop does not contain and/or is not connected to any harmful devices, such as an explosive. *Id*.

Notably, the application on which the '578 Patent is based was filed just 13-days after the TSA announced its new standard by notifying the public at large that, if a manufacturer manufactured a computer case with two sides that connect to each other at a hinge so the two sides can open and lay flat on a security scanning X-ray conveyor belt and one side of the case holds only the laptop and nothing else, *i.e.*, exactly the bag described in the '578 Patent, the TSA would allow travelers to pass through security without removing their laptops from their bags.[1] In other words, the alleged inventors of the '578 Patent's computer bag merely sought a patent for exactly

---

[1] Specifically, on March 3, 2008 the TSA published a Request for Information (RFI) entitled, "Request for Information Checkpoint Friendly Laptop Bag," under Solicitation Number HSTS04-08-RFI-MC (TSA RFI). The TSA RFI is available at: https://beta.sam.gov/opp/cf201053453821c8191e436af111d9b0/view?keywords=HSTS04-08-RFI-MC

what the TSA envisioned and announced via its standards. Yet, Targus inexplicably failed to bring the TSA's announcement to the attention of the Patent Office. Defendant's *inter partes review* Petition, however, finally puts this TSA information, and the timing thereof, in front of the Patent Office's Patent Trial and Appeal Board. Even then, however, despite the fact that Targus did not invent what it claims via the '578 Patent, the status of the prior art at the time Targus filed its application dictates that the claimed "invention" was not novel or worthy of patent protection. Indeed, beyond the TSA announcement and documentation which will undoubtedly be material to the Patent Office's decision of whether to confirm the issuance of the '578 Patent, Group III has recently discovered prior art material (*e.g.*, several other travel bags) that existed prior to the filing date of the '578 Patent. Group III has carefully outlined these prior art bags through 537 pages of invalidity contentions that it has served on Targus in this litigation, and has included several of said references in the IPR Petition that it just filed on December 24, 2020. As explained in its disclosures and IPR Petition, Group III confidently pursues the invalidation of the '578 Patent arguing that the cited references – *most of which were not presented to (or reviewed by) the Patent Office previously* – anticipate and render obvious the claims being asserted against Defendant in this case. Such materials will serve to invalidate the claims of the '578 Patent, even independent of the relevant and material TSA information that Targus concealed from the Patent Office during its prosecution of the underlying application that led to the issuance of the '578 Patent. It is upon all of the foregoing that Group III has based its IPR Petition, and on which it now seeks the instant stay of these proceedings.

/   /   /

/   /   /

### *The Purpose of the America Invents Act and the Inter Partes Review Process*

In 2011, Congress passed the Leahy-Smith America Invents Act ("AIA") and, in doing so, introduced a process known as "*inter partes review*" ("IPR") which was intended to serve as "a quick, inexpensive, and reliable **alternative to district court litigation**." S. Rep. No. 110–259, at 20 (2008) (emphasis added); *see also* H.R. Rep. No. 112-98, pt. 1, at 48 (2011). As an "alternative" to litigation, IPRs allow a party to ask the PTAB "to reexamine the claims in an already-issued patent and to cancel any claim that the agency finds to be unpatentable in light of prior art." *Cuozzo Speed Techs. v. Lee*, 136 S. Ct. 2131, 2136 (2016). This process seeks to eliminate costly litigation concerning a patent's validity, and to lower the burden on the court system – a relief valve desperately needed by the courts during the COVID pandemic which has resulted in an unprecedented backlog of court files. Senator Chuck Grassley reinforced this clear function of the AIA during debate on the Senate floor during which he characterized the purpose of the IPR process as intending to serve as a "**complete substitute** for at least the patents-and-printed-publications portion of the civil litigation." 157 Cong. Rec. S1360-94 (daily ed. Mar. 8, 2011) (emphasis added).

As a result of this new and efficient means of challenging a patent's validity, the IPR process, although entirely optional, has been regularly pursued by accused infringers. Indeed, it has proven to be an extremely efficient means of streamlining patent litigation and removing undue hardship on litigants and the court system. For example, as of the June 2020 data reporting, of the total final written decisions that have issued from IPR proceedings, a staggering 80% have declared at least some of the challenged claims to be invalid, with nearly 78% of that total declaring ALL

challenged claims to be invalid.[2] Against this backdrop, where a patentee has placed nearly 40 separate claims of the patent in-suit at issue (as Targus has done here), the IPR process becomes so much more important and beneficial to litigants and the court. Indeed, as courts have aptly noted in scenarios such as the one *sub judicie*: "if the PTO declines <u>inter</u> <u>partes</u> review, little time is lost, but if the PTO grants <u>inter</u> <u>partes</u> review, the promise is greater for an important contribution by the PTO to resolution of the governing issues in the litigation." *Patent Asset Licensing, LLC v. Bright House Networks, LLC*, Case No. 3:15-cv-742-J-32MCR, 2016 WL 4431574, at *4 (M.D. Fla. Aug. 22, 2016) (quoting *Capriola Corp. v. Larose Indus.*, No. 8:12–cv–2346–T–23–TBM, 2013 WL 1868344, at *2 (M.D. Fla. March 11, 2013)).

<u>LEGAL ARGUMENT</u>

*Granting a Stay of Litigation*

It is well settled that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Bright House Networks, LLC*, 2016 WL 4431574, at *2 (quoting *Landis v. N. Am., Co.*, 299 U.S. 248, 254 (1936)). Stays of litigation are appropriate under many circumstances, but one of the more regular instances involves patent litigation (*like this one*) where the accused infringer files an IPR petition seeking to invalidate the patent in suit. In such scenarios, when an accused infringer "moves to stay patent infringement litigation during the pendency of PTAB proceedings concerning the validity of patents-in-suit, courts consider three

---

[2] *See* https://www.uspto.gov/sites/default/files/documents/Trial_Statistics_20200630_.pdf (Trial Statistics for IPR, PGR, CBM, by the Patent Trial and Appeal Board, at p. 11, June 2020) (last visited on December 15, 2020).

factors, including: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Id.* Analysis of each of the foregoing factors militates in favor of granting a stay in the instant proceedings pending IPR review of the '578 Patent.

### Factor #1
#### *A Stay will Not Unduly Prejudice or Present a Clear Tactical Disadvantage to Targus*

Group III acknowledges that *some* prejudice (in the form of a "delay" in the proceedings) will inherently result to Targus upon the imposition of a Stay; but, such prejudice does not qualify as "undue" prejudice. As explained by the Middle District, "standing alone, the potential for litigation delay does not establish **undue** prejudice." *Bright House Networks, LLC*, 2016 WL 4431574, at *2 (emphasis in original); *see also CANVS Corp. v. NIVISYS, LLC,* 2:14-cv-99-FtM-38DNF, 2014 WL 6883123, *5 (M.D. Fla. Dec. 5, 2014) (rejecting patentee's argument that a delay of the litigation would cause prejudice, and finding that such an "argument is a nonstarter."); *InVue Security Products, Inc. v. Vanguard Prods. Group, Inc*., 8:18-cv-2548-T-33SPF, 2019 WL 3958272 (M.D. Fla. Aug. 22, 2019) (delay in litigation caused by a stay "is outweighed by the many advantages of *inter partes* review."). Indeed, Targus can hardly be heard to complain of any prejudice relating to a delay in final adjudication as it waited nearly 7-years **after** the '578 Patent issued before it notified Group III of its claims of infringement by pursuing the instant litigation. *See* [Dkt. No. 1, showing the filing date of this litigation as April 2, 2020, and Dkt. No. 1-1, showing the '578 Patent issue date as October 29, 2013]. Such a long 7-year delay in pursuing its claims in this suit undoubtedly overshadows – *by great measure* – any delay that will be caused

by Group III's IPR, given the statutorily imposed expedited procedures of such review process.

As the *Bright House Networks* court explained:

> Although a stay will delay [the patentee's] day in court, 'any such delay is outweighed by the many advantages of inter partes review.' Andersons, Inc. v. Enviro Granulation, LLC, No. 8:13-CV-3004-T-33MAP, 2014 WL 4059886, at *2 (M.D. Fla. Aug. 14, 2014). In fact, since the Federal Circuit's decision to reverse and remand a district court's decision to deny a motion to stay after the PTAB instituted a covered business method review in VirtualAgility v. Salesforce.com, Inc., 759 F. 3d 1307 (Fed. Cir. 2014), 'courts have been nearly uniform in granting motions to stay proceedings in the trial court after the PTAB has instituted inter partes review proceedings.' NFC Tech. LLC v. HTC Am., Inc., No. 2:13-CV-1058-WCB, 2015 U.S. Dist. LEXIS 29573, at *18, 2015 WL 1069111 (E.D. Tex. Mar. 11, 2015) (citing numerous cases).

Moreover, because of the specific and clear congressional intent that the IPR process serve as a

"**complete substitute**" and "**reliable alternative to district court litigation**," [*see* p. 5 *infra*],

> **courts in the Eleventh Circuit have also stayed cases before the PTAB has decided whether to institute an inter partes review, noting the 'concrete, numerous, and well-recognized benefits of resort to the PTO' as '(1) furthering judicial economy; (2) determining validity; (3) focusing the issues, defenses, and evidence; (4) developing the prior art and prosecution history; (5) obtaining the PTO's particular expertise; (6) encouraging settlement; and (7) reducing costs to the parties.'** Andersons, 2014 WL 4059886, at *2; *see* also Petmatrix LLC v. Wenzhou Yuxiang Pet Prod. Co., Case No. 6:15-cv-344-Orl-40KRS, 2015 U.S. Dist. LEXIS 114496 (M.D. Fla. Aug. 4, 2015), adopted by Petmatrix LLC v. Wenzhou Yuxiang Pet Prod. Co., No. 6:15-cv-344-Orl-40KRS, 2015 U.S. Dist. LEXIS 114499 (M.D. Fla. Aug. 28, 2015) (granting joint motion to stay prior to PTAB decision on institution); Interface, Inc. v. Tandus Flooring, Inc., No. 4:13-CV-46-WSD, 2013 WL 5945177 (N.D. Ga. Nov. 5, 2013) (granting motion to stay prior to PTAB decision on institution); Capriola Corp. v. Larose Indus., No. 8:12–cv–2346–T–23–TBM, 2013 WL 1868344, at *1 (M.D. Fla. March 11, 2013) (same).

2016 WL 4431574, at *2 (emphasis added in bold). All of the above seven enumerated benefits

apply in the instant litigation. In a broad sense, Group III's IPR is likely to resolve the entire

litigation or, *at a minimum*, substantially simplify the case and reduce the burden of the litigation

on the Court and on the parties. Indeed, in light of the Supreme Court's decision in *SAS Institute,*

*Inc. v. Iancu*, 138 S.Ct. 1348 (2018), if the PTO grants review of Group III's IPR petition, the PTO is statutorily required to address each and every claim challenged by Group III in the pending petition. Accordingly, the likely institution of Group III's IPR petition will ensure that the Court is provided the benefit of the PTO's expert guidance on a broad range of claims of the '578 Patent. The IPR will thus naturally and substantially reduce the claim construction, fact and expert discovery burdens on the Court and on the parties. In light of the foregoing (and staying focused on the above listed seven factors), should this Court issue a Stay of this litigation: (1) judicial economy will be served by immediately reducing the unusually heavy burden presently felt by the court as a result of the halting effects the COVID pandemic has had on the court system at large; (2) the validity of all, or at least some, of the claims within the '578 Patent will be determined upon institution of the IPR process, thereby eliminating complex issues from this litigation; (3) the issues for trial – *if trial is even necessary following the IPR* – will be narrowed, simplified and focused in light of the mandatory estoppel effects of the IPR process;[3] (4) the prior art and prosecution history contained in the file wrapper for the '578 Patent will be further developed and will better aid the Court in any future claims construction determinations;[4] (5) the anticipated final written decision that must issue following institution of the IPR will provide thoughtful guidance from the experts at the US Patent Trial and Appeal Board, and will avoid the need for the Court

---

[3] Section 315(e) of the AIA estops IPR petitioners (like Group III) from asserting in litigation an invalidity challenge based "on any ground that the petitioner raised or reasonably could have raised during that *inter partes review*." 35 U.S.C. § 315(e).

[4] Moreover, any positions taken by Targus in opposition to Group III's IPR petition will become part of the '578 Patent file history, affect claims construction, and limit claim scope – even with respect to the patent claims, if any at all, that may be hereafter confirmed by the PTO. Indeed, "statements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer." *Aylus Networks, Inc. v. Apple, Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017).

having to conduct claims construction in two stages – once in the normal course of litigation, and yet again after any relevant representations to the PTO are made by Targus during the IPR regarding claim scope;[5] (6) Targus would be encouraged to become more reasonable in its demands in this litigation; and (7) in light of the streamlined and narrow focus of the IPR process, the cost to the parties to determine the validity of the '578 Patent will be much more efficient, as compared to litigating the issue of validity simultaneously with all other issues involved in this case (including issues relating to damages, unenforceability, inequitable conduct, claims construction, etc.), especially where all of these other "related" ancillary issues would be deemed moot upon the cancellation of the challenged '578 Patent.

As an aside, it is suspected that Targus will characterize Group III as a "direct competitor" to suggest that the facts of this case require a denial of the requested Stay. Without conceding such competitive positioning, Group III posits that such an argument would be improper and inappropriate in this case. Indeed, even assuming *arguendo* that the parties are direct competitors, such an argument has been previously rejected where, *as here*, the patentee failed to seek the imposition of a preliminary injunction and, instead, only sought monetary damages. *See, e.g., Andersons, Inc. v. Enviro Granulation,* LLC, 8:13-cv-3004-T-33MAP, 2014 WL 4059886, *3 (M.D. Fla. Aug. 14, 2014) (rejecting the argument that a Stay should be denied because of the competitive status of the parties where the patentee had "not sought a preliminary injunction and […] any damages [the patentee] incurs may be remediated with money damages"); *see also*

---

[5] *See Intellectual Ventures II LLC v. U.S. Bancorp*, 2014 WL 5369386, at *7 (D. Minn. Aug. 7, 2014) (noting that if a court conducts claims construction during a pending IPR, and then a patentee "makes narrowing arguments to the PTAB to attempt to distinguish the prior art, the litigation proceedings (and in particular the claim construction proceedings) may have to be repeated so that such narrowing arguments can be properly considered.)

**The Concept Law Group, P.A.**        6400 N. Andrews Ave., Suite 500
Patents | Copyrights | Trademarks        Fort Lauderdale, Florida 33309
P a g e | 10

*Capriola*, 2013 WL 1868344, at *2 (accord). Here, Targus waited more than 7-years to file this lawsuit, has never sought a preliminary injunction and, instead, has only sought the imposition of monetary damages; to this end, "it is well established that 'the availability of money damages is sufficient to protect [a patentee] from prejudice.'" *Bright House Networks, LLC*, 2016 WL 4431574, at *3 (quoting *Tomco Equip. Co. v. Se. Agri-Sys., Inc.*, 542 F. Supp. 2d 1303, 1308 (N.D. Ga. 2008)). This argument, if made by Targus, should thus be rejected by the Court.

For all of the foregoing reasons, and because of the high likelihood that the '578 Patent will be cancelled by the PTO, Group III submits that this first factor militates heavily in favor of granting a Stay of this litigation. No *undue* prejudice will result to Targus, nor will Targus suffer any tactical disadvantage should the case be halted pending disposition from the PTAB on the pending IPR petition. Such is true even though the PTO has not yet instituted review of the pending IPR Petition.  As the *Capriola* court observed:

> because the PTO apparently will not consume much time unless the PTO perceives an important patent issue within the PTO's particular expertise; and because an important issue that appears in the litigation also appears to fall within the PTO's province and particular expertise, prudence commends resort to a stay until either the PTO declines review or, finding an important issue within the PTO's special province, the PTO grants and completes review to the benefit of the parties, the court, and the public. In other words, the investment of some time at this juncture appears wise.

2013 WL 1868344, *3. Group III submits that the same reasoned logic applies here, and thus requests that this Court issue an Order staying this litigation pending the outcome of the IPR.

<u>**Factor #2**</u>
***A Stay Will Simplify the Issues in Question and Trial of the Case***

The second factor courts consider in deciding whether to issue a stay of patent litigation pending an IPR concerns whether the outcome of the IPR would tend to simplify the issues in

question and the ultimate trial of the case. *Bright House Networks, LLC*, 2016 WL 4431574, at \*2. This issue weighs decisively in favor of a stay where, as here, the claims and defenses involved in the litigation all center around the challenged patent. *Compare InVue Security Products,* 2019 WL 3958272 (noting that while the IPR in that case would simplify the issues concerning the two challenged patents, "it would not simplify the resolution of [the patentee's] claims related to six uncontested patents" and, as such, the second factor was found to "weigh only slightly in favor of a stay."). As one court explained, "waiting for the outcome of the [*inter partes* review] could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the PTO and clarifying the scope of the claims." *CANVS*, 2014 WL 6883123, \*3. Here, too, there is no question that the issues in this case will be simplified, if not *eliminated*, once Group III's IPR is concluded. As such, this second factor also weighs heavily in favor of granting the requested stay.

Here, Group III has submitted over 500 pages of invalidity challenges in this litigation in connection with its Affirmative Defenses and Counterclaims seeking to invalidate the '578 Patent. Such invalidity defenses, if successful, will wholly defeat Targus's claims against Group III in this case. Such defenses, however, involve highly technical questions of patent law that the litigants will have to spend significant time and resources to discover, and the Court will thereafter have to spend its scarce resources to adjudicate. Moreover, if the validity question cannot be adjudicated by the Court, then the complex technical patent validity challenge would ultimately prolong the trial and unnecessarily complicate the issues for a layperson jury to consider. These very considerations are what has caused courts to conclude that the simplification factor "weighs strongly in favor of entering a stay" where, *as here*, invalidity counterclaims and affirmative

defenses are present in the litigation concerning the patent subject to IPR challenge. *See, e.g.,*
*Lighting Science Group Corp. v. Nicor, Inc.*, 6:16-cv-413-Orl-37GJK, 2017 WL 3706697, *3
(M.D. Fla. May 9, 2017) (finding that the second factor weighed decisively in favor of a stay,
reasoning: "[g]iven the pending invalidity counterclaims and affirmative defenses […], there is
little doubt that input from the PTO will facilitate the resolution of these proceedings."); *see also*
*Bright House Networks, LLC*, 2016 WL 4431574, at *4 ("If the PTAB invalidates some of the
asserted claims, this Court will have fewer claim terms to construe and analyze for
infringement…if the PTAB invalidates all of the asserted claims, [the patentee's] lawsuit will be
moot.").

Moreover, Section 315(e) of the AIA will estop Group III from asserting in this litigation
an invalidity challenge based "on any ground that the petitioner raised or reasonably could have
raised during that *inter partes review*." 35 U.S.C. § 315(e). Based on this reality, the issues in this
case will unquestionably be simplified at least to some extent, regardless of the outcome of the
IPR process. *See Bright House Networks, LLC*, 2016 WL 4431574, at *4 ("…even if the PTAB
were to uphold any of the challenged claims, the post-stay proceedings in this Court will be
streamlined because Defendants…will be estopped from making redundant invalidity
arguments."). Once again, therefore, this issue weighs decisively in favor of issuing a stay in this
litigation. As summed up poignantly by one district court,

> Absent a stay, the litigants and Court will invariably expend significant time and
> resources engaging in claim construction, filing dispositive motions, and preparing
> for trial. This time and effort would be wasted if the PTO's decision on the *inter*
> *partes* review drastically alters the nature of the case. The PTO's decision on *inter*
> *partes* review could also cause the parties to revamp their litigation strategy and
> arguments considerably in this case.

*CANVS Corp.*, 2014 WL 6883123, *5.

Based on all of the foregoing, there is no question that a stay of these proceedings will avoid the wasteful expenditure of party and judicial resources. More importantly, allowing the IPR process to run its natural course will ultimately result in a simplification of the issues involved in this case – in fact, the outcome of the IPR could totally eliminate Targus's claims of patent infringement. This factor thus weighs heavily in favor of granting a stay.

<strong><u>Factor #3</u></strong><br/><strong><em>Discovery is Not Yet Complete and a Trial Date has Not been Set</em></strong>

The focus of the final factor seeks to assess the procedural posture of the litigation, and specifically looks to determine whether discovery is complete and whether a trial date has been set. Theoretically, the further the progression of the litigation, the less weight this factor lends in support of imposing a stay. In this instance, although the case was filed by Targus on April 2, 2020, since then the parties have only engaged in written discovery. Neither party has taken any oral depositions, and Group III has only issued one third-party subpoena. Targus has not sought any third-party discovery. Aside from written discovery, the parties have complied with the Court's Scheduling Order regarding infringement, non-infringement, invalidity, unenforceability, and preliminary claims construction disclosures. That said, neither party has filed Claim Construction briefs, as opening briefs on said issue are not due until January 12, 2021, [Dkt. No. 28, at 2], but the parties have filed the required Joint Claim Construction Statement, [Dkt. No. 58]. That said, "courts in this Circuit have stayed litigation even after, as here, a joint claim construction statement has been filed." *Bright House Networks, LLC*, 2016 WL 4431574, at *4.

Moreover, a *Markman* hearing has not yet been scheduled, fact discovery remains open until April 28, 2021, and is followed by the closure of Expert Discovery on June 11, 2021. *Id.*

Pretrial submissions are not due until October 2021, and a trial date has not yet been set by this Court. Needless to say, although eight months have passed since Targus commenced this litigation, not much has occurred substantively. Clearly, this case remains in its procedural infancy, and such militates heavily in favor of granting the requested stay.

### CONCLUSION AND LOCAL RULE 7.1(D)(2) REQUEST FOR EXPEDITED TREATMENT

Based on all of the foregoing, Group III respectfully submits that the imposition of an immediate stay in this case is necessary and appropriate. Targus waited 7-years before even pursuing its alleged claims against Group III, and has now asserted that Group III infringes nearly 40 separate claims of the '578 Patent. Given that all of Targus's claims depend on the validity of the '578 Patent, it behooves the parties and the court to allow the experts at the US Patent Office to access and adjudicate whether the asserted patent is indeed valid. If its validity is confirmed, then the case may proceed with the benefit of the US Patent Office's confirmation of validity. If, however, the patent is declared invalid and cancelled, this entire litigation will immediately become moot and the case will naturally be dismissed. Under either scenario, the litigants and the court will benefit from a short delay caused by the IPR review process. Indeed, any assertion by Targus that it will somehow be prejudiced by the delay must be rejected for the mere fact that Targus waited more than 7-years before filing this litigation. Simply put, the facts of this case weigh heavily in favor of issuing the requested stay pending the conclusion of the IPR review.

Additionally, because of the significant impact the IPR process may have on the instant litigation, and because of the heavy expense of the litigation process, Group III respectfully requests that this Court adjudicate this Motion to Stay on an expedited basis, with a truncated

briefing schedule and hearing in advance of the January 12, 2021 deadline to file Claims Construction briefings. Indeed, because of the likely institution of Group III's IPR petition, the Court (and the litigants) are bound to be provided the benefit of the PTO's expert guidance on a broad range of issues concerning the claims of the '578 Patent. For example, the IPR will affect claims construction, fact and expert discovery, and shape the overall presentation of the evidence in this case.

As just one example of the benefit that would be felt from an IPR review, the prior art and prosecution history contained in the file wrapper for the '578 Patent will be further developed and will better aid the Court in any future claims construction determinations. As previously noted, any positions taken by Targus in opposition to Group III's IPR petition will become part of the '578 Patent file history, affect claims construction, and limit claim scope – even with respect to the patent claims, if any at all, that may be hereafter confirmed by the PTO. Indeed, "statements made by a patent owner during an IPR proceeding, whether before or after an institution decision, can be considered for claim construction and relied upon to support a finding of prosecution disclaimer." *Aylus Networks, Inc. v. Apple, Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017). To this end, the anticipated final written decision that must issue following institution of the IPR will provide thoughtful guidance from the experts at the PTAB, and will avoid the need for the Court having to conduct claims construction in two stages – once in the normal course of litigation, and yet again after any relevant representations to the PTO are made by Targus during the IPR regarding claim scope. This reality, coupled with the looming January 12, 2021 due date for opening claims construction briefing provides an independent basis for expedited review and adjudication of the instant motion.

**WHEREFORE**, Defendant, Group III International, Inc., by and through the undersigned counsel, hereby respectfully requests that this Court enter an expedited Order Staying the entirety of this Litigation pending resolution of the *Inter Partes Review* filed by Group III concerning the '578 Patent, and for such further and additional relief as this Court deems just and proper under the circumstances.

## L.R. 7.1 CERTIFICATE OF GOOD FAITH CONFERENCE

I HEREBY CERTIFY that that counsel for the movant has conferred via email with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion, and Plaintiff's counsel has opposed the relief sought herein.

**Dated: December 28, 2020.**

Respectfully submitted,

**THE CONCEPT LAW GROUP, P.A.**
*Counsel for Defendant/Counter-Plaintiff*
*Group III International, Inc.*
6400 North Andrews Avenue, Suite 500
Fort Lauderdale, Florida 33309
Telephone: 754-300-1500


By:   */s/ Alexander D. Brown*
        Alexander D. Brown (FBN: 752665)
        Email: Abrown@conceptlaw.com
        Scott D. Smiley (FBN: 678341)
        Email: Scott@conceptlaw.com

<u>**CERTIFICATE OF SERVICE**</u>

**I HEREBY CERTIFY** that the foregoing was electronically filed with the Clerk of the

Court using the CM/ECF system, on December 28, 2020, which will send a notice of electronic

filing to all attorneys of record as per the below Service List.

> By:   */s/ Alexander D. Brown*
>       Alexander D. Brown (FBN: 752665)
>       E-mail: Abrown@conceptlaw.com

<u>**SERVICE LIST**</u>

Kevin P. Jacobs (kjacobs@homerbonner.com)
Brian Lechich  (blechich@homerbonner.com)
**HOMER BONNER JACOBS ORTIZ, PA**
1200 Four Seasons Tower
1441 Brickell Avenue
Miami, FL 33131
T: (305) 350-5100; F: (305) 372-2738
*Attorneys for Plaintiff TARGUS INTERNATIONAL, LLC*

Michelle E. Armond (michelle.armond@armondwilson.com)
*(pro hac vice pending)*
Forrest M. McClellen (forrest.mcclellen@armondwilson.com)
*(pro hac vice pending)*
**ARMOND WILSON LLP**
895 Dove Street, Suite 300
Newport Beach, CA 92660
T: (949) 932-0778; F: (512) 345-2924
*Attorneys for Plaintiff TARGUS INTERNATIONAL, LLC*

Douglas R. Wilson (doug.wilson@armondwilson.com)
*(pro hac vice pending)*
**ARMOND WILSON LLP**
9442 Capital of Texas Highway North
Plaza One, Suite 500
Austin, Texas 78759
T: (512) 267-1663; F: (512) 345-2924
*Attorneys for Plaintiff TARGUS INTERNATIONAL, LLC*